# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

**CHERYL LOOS,**

      **Plaintiff,**

**-vs-**                                                      **Case No. 5:10-cv-102-Oc-18TBM**

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits.[1] Because the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, it is recommended that it be reversed and remanded for an award of benefits.

I.

Plaintiff was forty-eight years old at the time of her administrative hearing on February 6, 2009. She stands five feet, three inches tall and weighed 117 pounds at the hearing, although Plaintiff testified that she had lost over twenty pounds in the preceding four to five years. (R. 49). Plaintiff graduated high school and completed three years of college course work. (R. 117). She has past relevant work as a telecommunications advertising salesperson. (R. 113, 188).

---

[1] This matter comes before the undersigned pursuant to the Standing Order of this court dated August 28, 1987. *See also* M.D. Fla. R. 6.01(c)(21).

Plaintiff applied for disability benefits in March 2006, alleging disability as of December 6, 2004, due to fibromyalgia, chronic fatigue, Epstein-Barr syndrome, anemia, irritable bowel syndrome, vertigo, degenerative disease of the cervical spine, skin rash and affective mood disorder. (R. 94-95, 112, 188). Plaintiff last met the insured status requirements on September 30, 2009. (R. 96). Plaintiff's claim was denied initially and upon reconsideration. (R. 58-61, 64-69). The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge (ALJ). (R. 32-55). The Plaintiff was represented at the hearing by an attorney and testified on her own behalf.

According to Plaintiff, she was first diagnosed with fibromyalgia after the birth of her son in 1989. Plaintiff testified that, due to her fibromyalgia, she is in constant pain from her neck and shoulders down her right arm to her hand, her lower back, and sometimes through her knees. Plaintiff testified that her pain is never less than a seven on a scale of one to ten. When she has a flare up, it is like having a migraine from head to toe. She is also frequently tired, which she attributes to the constant pain and the lack of good sleep at night. Plaintiff has low-grade headaches daily and migraines up to three times a week, as well as cluster headaches that do not go away. Plaintiff testified that her doctor gives her a shot a couple times of year to break her migraine cycle and that she is also treated by a chiropractor. Plaintiff has depression related to her fibromyalgia and she suffers from daily nausea and diarrhea related to irritable bowel syndrome. She has difficulty gripping with her right hand and cannot use a keyboard for more than a minute or two. She has been prescribed various medications, many of which have failed to work or made her more tired, so she only takes those that she believes to be necessary.

Plaintiff lives with her husband and thirteen-year old daughter, who perform most of the household chores. By her account, she cannot vacuum, dust, or do laundry; she cannot lift or pull things; she does not shop; she does not cook because she cannot grip things in her right hand; and she cannot cut or lift pans. Plaintiff does not like to wear jeans or clothing that pushes on her skin because it concentrates the pain where the clothes push in on her.

Plaintiff testified that in March 2007 she began working part-time, twelve to fifteen hours a week, as a customer service representative for Grainger. At the time of the hearing, she was still working for Grainger but she expected to be laid off in the next month. She could not perform that job on a full-time basis because it required her to stay on her feet and she cannot stay in the same position for very long before her pain becomes overwhelming. Her employer allowed her to "get off [her] feet at least every hour" and divided her position with another worker. Despite these accommodations, Plaintiff frequently missed work.

Also before the ALJ were medical records outlining Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By his decision of March 30, 2009, the ALJ determined that while Plaintiff has severe impairments related to Epstein-Barr syndrome, degenerative disc disease of the cervical spine, and fibromyalgia, she nonetheless had the residual functional capacity to perform the full range of light work.[2] The ALJ then found that Plaintiff was not disabled because she could return to her past work as a telecommunications salesperson. After considering additional evidence, the Appeals

---

[2] The ALJ found that Plaintiff could lift/carry/push/pull up to twenty pounds occasionally and ten pounds frequently; stand/walk for about a total of six hours per eight-hour workday; and sit for at least a total of six hours per workday.

Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656, 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

Plaintiff raises two issues on appeal. First, Plaintiff argues that the ALJ failed to properly evaluate the opinions of her treating physician, Dr. David Willis. Second, Plaintiff contends that the ALJ erred at step two of the sequential evaluation by finding that her depression was not a severe impairment. Plaintiff's second argument is addressed first.

By this argument, Plaintiff contends that the ALJ committed legal error by finding at step two of the sequential analysis that Plaintiff's affective mood disorder was not a severe impairment. In so finding, Plaintiff contends that the ALJ erroneously disregarded treating and consulting

evidence and relied instead on the opinions of nonexamining, state agency psychologists. (Doc. 11 at 11-13). The Commissioner counters that the ALJ did not err at step two because he found that Plaintiff had other severe impairments and continued through the sequential evaluation process. (Doc. 12 at 8-13). By my consideration, the Commissioner is correct.

At the second step of the sequential evaluation, the ALJ must "consider the medical severity of [the claimant's] impairments." *Wind v. Barnhart,* No. 04-16371, 2005 WL 1317040, at *5 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d. 1232, 1237 (11th Cir. 2004)). In doing so, the ALJ must determine whether the impairments, alone or in combination, "significantly limit" the claimant's "physical or mental ability to do basic work skills." *Id*. Objective medical evidence must confirm that the impairment is severe. However, a diagnosis is insufficient; instead, Plaintiff must show the effect of the impairment on her ability to work. *Id*.

The ALJ discussed at step two all of the record medical evidence regarding Plaintiff's alleged mental impairment. He rated her mental condition using the psychiatric review technique required by the regulations and determined that Plaintiff's mental impairment imposed no more than mild functional limitations and no episodes of decompensation. (R. 25). Plaintiff nevertheless argues that, in reaching this conclusion, the ALJ improperly rejected the clinical findings and assessments of treating and examining doctors in favor of the contrary assessments of nonexamining reviewers and improperly attempted to render his own psychological assessment of Plaintiff based on her behavior at the hearing. (Doc. 11 at 11-13).

Upon consideration, I find no error. As recognized by the Plaintiff (Doc. 11 at 11), the only medical evidence of record regarding Plaintiff's mental impairment is from the treating

psychologist's evaluation at the Marion-Citrus Mental Health Center (R. 197-209) and the consultative evaluation by Dr. Character (R. 276-79). However, contrary to Plaintiff's suggestion, neither of these psychologists made findings suggesting that Plaintiff's depression caused more than mild social and/or occupational limitations. The records from Marion-Citrus Mental Health Center reflect that while Plaintiff had a depressed mood, impaired remote memory, recent weight loss, and concentration problems, her appearance and affect were appropriate, her judgment/impulse control was intact, and she was oriented times three. She was diagnosed with major depression, recurrent, and a GAF score of 54, and it was recommended that she attend group counseling. To the extent Plaintiff suggests that the GAF score evidences a severe impairment, that argument is without merit. According to DSM-IV-TR,[3] a GAF score reflects the examiner's opinion regarding an individual's symptoms or possible difficulty in social, occupational, or psychological functioning. *See* DSM-IV-TR at 32-34. Nonetheless, a GAF score "does not itself necessarily reveal a particular type of limitation and 'is not an assessment of a claimant's ability to work.'" *Ward v. Astrue*, No. 3:00-cv-1137-J-HTS, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008). Moreover, the Commissioner has specifically declined to endorse the GAF scale for use in the disability programs, and has stated that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings." *Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury,* 65 Fed. Reg. 50746, 50,764-65 (Aug. 21, 2000). Accordingly, an opinion regarding a GAF score, even if required to be accepted as valid, would not translate into a specific finding in regard to functional limitations.

---

[3]The American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. text rev. 2000).

Likewise, Dr. Character's evaluation supports the ALJ's conclusion that Plaintiff's mental impairments are not severe. Plaintiff reported poor appetite; that she was exhausted and tired of being sick; disrupted sleep due to pain; no energy or sexual drive; and strong feelings of guilt. Dr. Character diagnosed mild depression and pain disorder associated with both psychological factors and a general medical condition. On examination, Dr. Character noted that Plaintiff had a sad affect when discussing her physical health; and common sense reasoning skills testing showed that she may not always use her best judgment. (R. 276-79). These findings and the treatment notes from Marion-Citrus Mental Health Center are consistent with the ALJ's conclusion that Plaintiff's mental impairments cause only mild limitations.

The ALJ's conclusion also is supported by the Psychiatric Review Techniques completed by nonexamining, state agency physicians in June 2006 and March 2007. Both nonexamining consultants concluded that Plaintiff's affective and somatoform disorders were not severe and resulted in only mild functional limitations. (R. 228-41, 280-93).

Plaintiff also argues that the ALJ attempted to render his own psychological assessment of Plaintiff based on her behavior at the hearing. The ALJ noted that, although Plaintiff "became tearful near the end of the hearing, there was no obvious evidence of any significantly limiting mental or emotional problem demonstrated during the course of the hearing." (R. 30). This conclusion is not improper as the ALJ did not substitute his lay opinion for that of medical experts. Indeed, his observations are consistent with the medical records and offer further support for the ALJ's conclusion that Plaintiff's mental impairments are not severe.

However, even if the ALJ erred in failing to include Plaintiff's mental condition as a "severe" impairment, that error would have been harmless because the ALJ did not stop his analysis at step two of the sequential analysis. Because the ALJ found three impairments to be severe – i.e., Epstein-Barr syndrome, degenerative disc disease of the cervical spine, and fibromyalgia – and proceeded to step three of the sequential analysis, the ALJ's analysis at step two does not constitute reversible error. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).

Next, Plaintiff argues that the ALJ failed to provide good cause for his rejection of the opinions of her treating physician, Dr. Willis. According to Plaintiff, while the ALJ purported to give "some" weight to Dr. Willis's opinion, he seemingly rejected the doctor's opinion outright given his determination that Plaintiff retained the functional capacity to perform a full range of light work because Dr. Willis's opinions on Plaintiff's functional capacity support an inability to perform even sedentary exertional work. And, while the ALJ did provide reasons for discounting Dr. Willis's opinions, Plaintiff argues that such reasons are unpersuasive given her fibromyalgia and reflect the ALJ's misunderstanding of the nature of that impairment. Thus, Plaintiff contends that the reasons provided by the ALJ are unsupported by the record. (Doc. 11 at 8-11).

The Commissioner counters that the ALJ properly determined that Dr. Willis's opinions were not entitled to great or controlling weight because they were not well supported by his treatment notes or the objective evidence as a whole and instead were based primarily on Plaintiff's subjective complaints. The Commissioner further counters that the reasons provided by the ALJ for discounting the treating doctor's opinions were supported by substantial evidence. In

support, the Commissioner notes that Dr. Willis reported that Plaintiff had diminished neck range of motion in his functional assessment yet physical examination from April and June of 2008 indicated that Plaintiff had full range of motion in her neck; in February 2008 it was noted that Plaintiff's fibromyalgia was stable; and Dr. Willis's records only documented a few detailed physical examinations that support specific tender points related to fibromyalgia. The Commissioner also urges that Dr. Willis's opinions are inconsistent with Dr. Field's examination, which was essentially normal, and with Dr. Borkoski's observations that Plaintiff had normal motor strength in her extremities, intact sensation, and a normal gait. Lastly, the Commissioner contends that Dr. Willis's opinions are also inconsistent with Plaintiff's own report of her daily activities. (Doc. 12 at 4-7).

When considering a treating physician's opinion, the ALJ must ordinarily give substantial or considerable weight to such evidence unless good cause is shown to the contrary. *Phillips*, 357 F.3d at 1240; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. § 404.1527(d)(2). Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41(citing *Lewis*, 125 F.3d at 1440). In this circuit, where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

Upon a review of the ALJ's decision, as well as an examination of the medical records at issue, I conclude that the ALJ's stated reasons for rejecting the treating physician's opinion fail to establish the requisite cause required for doing so under the circumstances that exist here – disability alleged primarily on the basis of fibromyalgia.  Here, the ALJ determined that Plaintiff's fibromyalgia constituted a severe impairment under the Act (R. 23), but he discounted the opinions of Plaintiff's treating physician, Dr. Willis, because of the perceived lack of objective evidence supporting his opinions.  *See* (R. 27).  At issue were Multiple Impairment Questionnaires completed by Dr. Willis on January 30, 2008, and September 12, 2008.[4]  (R. 302-09, 386-92).

In the Questionnaires, Dr. Willis stated that he began treating Plaintiff in June 2001 and that he had been treating her every three months since then.  He noted that he had diagnosed Plaintiff with severe fibromyalgia, migraines, postmenopausal climacteric symptoms, multiple medication intolerances, and cervical spondylosis.  He noted that his diagnosis [of fibromyalgia] was supported by positive trigger points; diminished neck range of motion; abnormal cervical MRI with prior cord edema; evidence of loss of lordotic curve cervical spine; and normal blood testing for inflammatory/immune related diseases.  He stated that Plaintiff's primary symptoms included persistent neck pain, body aches, myalgias, paresthesia of the upper extremities, nausea, and significant fatigue. Dr. Willis noted that Plaintiff's pain was persistent with flare-ups in her neck, generalized around her back and joints, and headaches on a daily basis.  He rated Plaintiff's pain and fatigue both an eight on a scale of one to ten.  He noted that he had not been able to relieve Plaintiff's pain with medication without unacceptable side effects.  He opined that in an eight-hour

---

[4]The ALJ refers to one completed on January 30, 2009, but he clearly is referring to the one completed on January 30, 2008.  (R. 27).

-11-

day, Plaintiff could only sit for two hours and stand or walk for one hour. Plaintiff could not sit continuously and would need to get up and move around every thirty minutes; nor could she stand/walk continuously. He opined that Plaintiff could occasionally lift up to ten pounds and occasionally carry up to five pounds. He opined that Plaintiff was markedly limited in grasping, turning, twisting objects, and using arms for reaching; and moderately limited in using her fingers/hands for fine manipulations. He noted that Plaintiff's treatment included medication, physical therapy, and trigger point injections. Dr. Willis stated that Plaintiff's symptoms would frequently interfere with her attention and concentration; she would likely be absent from work more than three times a month as a result of her impairments; she was capable of only low stress work; and she would need to take daily, unscheduled breaks. Dr. Willis made similar findings in a Multiple Impairment Questionnaire completed in February 2006[5] and in a Fibromyalgia Impairment Questionnaire completed in July 2009.[6] (R. 328-35, 438-43).

In discounting Dr. Willis's opinions, the ALJ stated that the extent of the work-related limitations were not supported by Dr. Willis's treatment notes or the objective medical evidence considered in its entirety. The ALJ explained that Dr. Willis's treatment notes generally showed that Plaintiff had no serious physical or mental deficits and other medical evidence confirmed that

---

[5] In this Questionnaire, Dr. Willis noted that his diagnoses of fibromyalgia, allergic rhinitis, and irritable bowel syndrome were supported by the following findings: chronic daily fatigue; poor sleep; 14/18 trigger points consistent with fibromyalgia; frequent diarrhea; and frequent headaches. (R. 328). The ALJ does not address this questionnaire.

[6] This questionnaire was submitted to the Appeals Council.

-12-

Plaintiff had retained good range of motion in her neck, spine, and upper and lower extremities.[7] In addition, she had exhibited no significant neurological deficits, had demonstrated normal abilities to stand and walk, and had retained full use of her hands and arms. The ALJ further noted that the limitations described by Dr. Willis "appear to be largely based on the [Plaintiff's] reports of pain rather than objective medical evidence." (R. 27).

This explanation suggests a lack of understanding of the nature of fibromyalgia. A diagnosis of fibromyalgia - literally meaning "pain in the muscles and the fibrous connective joints (the ligaments and tendons)" - depends mostly on a person's own subjective reports of symptoms, namely pain. *Stewart v. Apfel,* 2000 U.S. App. LEXIS 33214 at *7 (11th Cir. 2000). There are no laboratory tests for the "presence or severity of fibromyalgia." *Stewart*, 2000 U.S. App. LEXIS 33214 at *8 (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). Individuals with fibromyalgia face symptoms such as "pain all over," fatigue, disturbed sleep, stiffness, and multiple tender points throughout the body. *Sarchet*, 78 F.3d at 306. Moreover, "[i]n stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results – a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Green-Younger v. Barnhart*, 335 F.3d 99, 108 ( 2d Cir. 2003) (quoting *Preston v. Sec. of Health & Human Servs*, 854 F.2d 815, 817-18 (6th Cir. 1988)).

---

[7]The other evidence referenced by the ALJ is that from Dr. Lawrence Field, D.O., a consultative examiner who saw Plaintiff in August 2006 and concluded she suffered neither mental nor physical impairments, *see* (R. 243-44), the evaluation by Dr. Jeffrey Borkoski, M.D., a neurologist, who saw Plaintiff in October 2007 for complaints of cervical disc disease (R. 294-98), and the reports from two non-examining state agency doctors (R. 246-62).

Dr. Willis diagnosed Plaintiff with fibromyalgia and none of the medical opinions of record disagreed with Dr. Willis's diagnosis despite the lack of objective evidence supporting it.[8] Moreover, Dr. Willis examined Plaintiff on at least twenty-six occasions and he consistently noted fibromyalgia flare-ups (R. 316, 318, 319, 323, 340, 341, 344), tender points throughout her body (R. 318, 336), migraines (R. 319, 326, 338, 339, 342, 345, 346), pain in her neck, back, hips, knees and arms (R. 315, 316, 318, 326, 336, 343, 346), and difficulty sleeping (R. 337, 342) – all of which are symptoms associated with fibromyalgia. In addition, Dr. Willis treated Plaintiff's fibromyalgia with Darvocet, Cymbalta, Lyrica, Ultram, Flexeril, and Effexor, as well as steroid tapers. (R. 317, 318, 319, 336, 337, 338, 339, 341). While the ALJ and the Commissioner urge these records are inconsistent with Dr. Willis's opinions on Plaintiff's functional capacity, I disagree given the nature of fibromyalgia and the documentation in support of the impairment. The other basis stated by the ALJ for rejecting Dr. Willis's opinion was that Dr. Willis's assessment of Plaintiff's physical limitation was "largely based on the [Plaintiff's] reports of pain rather than objective medical evidence." Once again, this underscores the ALJ's failure to understand fibromyalgia. As discussed above, out of necessity, Dr. Willis's assessment must be based (at least in part) on Plaintiff's subjective complaints because the symptoms of fibromyalgia are entirely subjective and there are no laboratory tests for the presence or severity of the

---

[8]On consultative examination in August 2006, Dr. Field assessed fibromyalgia, migraine headache history, and muscle strain of the cervical and lumbar spine. (R. 244). In October 2007, Dr. Borkoski assessed idiopathic cervicothoracic pain syndrome, complicated by fibromyalgia, as well as multilevel cervical spondylosis. (R. 295). The nonexamining, state agency doctors also agreed with the diagnosis of fibromyalgia. (R. 246, 255).

condition. By my consideration, these reasons offer no basis for discounting the opinions of this long time treating doctor.

Likewise, by my reading of the record, the opinions of one-time examining doctors and those from the nonexamining doctors do not supply the requisite good cause for the wholesale rejection of Dr. Willis's assessments. In this circuit, "[t]he good cause required before the treating physician's opinions may be accorded little weight is not provided by the report of a nonexamining physician where it contradicts the report of a treating physician." *Lamb v. Bowen*, 847 F.2d 698 (11th Cir. 1988). While the reports from the examining doctors merit consideration and some weight, they are entitled to no particular deference. Here, the findings from consulting doctors that Plaintiff had a full range of motion in the cervical and lumbar spine, normal gait, and 5/5 strength in her extremities despite her fibromyalgia, do not speak to Dr. Willis's assessment that Plaintiff was easy to fatigue and should lift no more than ten pounds occasionally, could neither sit nor stand for sufficient uninterrupted periods to permit a full day of work, and would likely miss work several days each month due to her condition. In these regards, the assessment by Dr. Willis stands unrefuted by any substantial evidence. Thus, even if the "other record" offered some basis to question Dr. Willis's assessment, it offers no basis to reject it wholesale.[9]

In sum, while the ALJ is correct that Dr. Willis's opinions were largely unsupported by clinical evidence (aside from repeated notations of trigger points and certain complaints associated with fibroymalgia) and based largely on Plaintiff's subjective complaints, that is par for the course

---

[9]On this point, it is worth noting that the consulting examiner opined that Plaintiff had no physical impairments with respect to her functional ability. (R. 244). Such an opinion is inconsistent with all other objective evidence, including the report of the nonexamining doctor on which the ALJ relied in concluding Plaintiff retained the functional capacity to perform light work.

-15-

with fibromyalgia. While the lack of clinical support might otherwise be an acceptable reason for discounting a treating physician's opinion, under the circumstances that exist in this case it was improper. *See Stewart*, 2000 U.S. App. Lexis 33214, at *7-10 (noting that fibromyalgia often lacks medical or laboratory signs; indeed, its hallmark is a lack of objective evidence); *Green-Younger*, 335 F.3d at 107-09 (providing that a doctor's opinion regarding functional limitations is not undermined by reliance on the plaintiff's subjective complaints when the plaintiff suffers from fibromyalgia); *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004) (noting that "fibromyalgia is diagnosed entirely on the basis of patients' reports of pain and other symptoms," its cause is unknown, there is no cure, and it is poorly understood within much of the medical community); *see also Harrison's Principles of Internal Medicine*, 1706-07 (Kurt J. Isselbacher et al., eds., 13th ed. 1994) (reporting that, with fibromyalgia, joint and muscle examination typically is normal). Furthermore, and perhaps most importantly, nothing contradicts significant aspects of Dr. Willis's assessments aside from the opinions of a consulting and two nonexamining, state agency doctors which I conclude cannot offer the requisite good cause to wholly discount Dr. Willis's assessments.

As noted above, where the ALJ fails to demonstrate good cause for discounting a treating doctor's opinions, as a matter of law, the doctor's opinions/assessments are accepted as true. *See MacGregor*, 786 F.2d at 1053. Here, at a minimum, the case should be remanded for proper consideration of Dr. Willis's assessments and possibly for the taking of vocational expert testimony. However, I conclude that the court actually has little choice but to reverse and remand

the case for an award of benefits in light of the unrefuted findings by the treating doctor beginning in February 2006.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, and it is recommended that it be reversed and remanded for an award of benefits consistent with this Report and Recommendation. It is further recommended that the Clerk be directed to enter Judgment in favor of the Plaintiff and to close the case, and the matter of fees and costs shall be addressed upon further pleadings.

Respectfully submitted this
18th day of November 2010.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a de novo determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable G. Kendall Sharp
Senior United States District Judge
Counsel of Record